UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KETAN PATEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 468 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| MAHENDRA WAGHA, and ) | |
| PORTFOLIO DIVERSIFICATION ) | |
| GROUP INC., ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Ketan Patel brought suit against Defendants Mahendra Wagha and Portfolio Diversification Group Inc., claiming breach of contract, breach of fiduciary duty, fraud, and violation of 15 U.S.C. § 78j(b) and 17 C.F.R. 10b-5 ("10b-5 claim") arising from the investment advisor relationship established between Patel and Defendants in February 2011. Following a trial in September 2015, a jury found in favor of Patel on all claims except for fraud, and awarded Patel $136,000 in compensatory damages and $64,000 in consequential damages.

On October 8, 2015, Defendants filed the instant motion for judgment as a matter of law, for a new trial, and to amend the judgment pursuant to Federal Rules of Civil Procedure 50, 59(a), and 59(e) respectively. Because Patel failed to provide evidence of loss causation to support the 10b-5 claim, the Court grants Defendants' motion for a judgment as a matter of law with respect to that claim and the motion for remittitur of the $64,000 in consequential damages. Because there was sufficient evidence to support the jury verdict in favor of Patel on the contract and fiduciary duty claims, the Court denies Defendants' motion with respect to those claims. Finally, because there was sufficient evidence provided at trial to support the award of $136,000

in compensatory damages, the Court denies Defendants' motion for remittitur of compensatory damages.

## LEGAL STANDARD

When ruling on a Rule 50 motion for judgment as a matter of law following a jury verdict, the Court does not re-weigh the evidence presented at trial or make credibility determinations. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); Fed. R. Civ. P. 50(b). The Court views the evidence and all reasonable inferences in the light most favorable of the prevailing party. *See Reeves*, 530 U.S. at 150–51; *Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 601 (7th Cir. 2006). A court will overturn the jury's verdict only if no reasonable juror could have found in the non-moving party's favor. *See Erickson*, 469 F.3d at 601. "This is obviously a difficult standard to meet." *Waite v. Bd. of Trs. of Ill. Cmty. Coll. Dist. 508*, 408 F.3d 339, 343 (7th Cir. 2005).

The decision to grant a new trial pursuant to Rule 59(a) is committed to the Court's discretion. *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 730 (7th Cir. 2013). A court will only order a new trial "if the jury's verdict is against the manifest weight of the evidence, or if for other reasons the trial was not fair to the moving party." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) (alteration omitted) (citation omitted) (internal quotation marks omitted). This is a difficult burden for Defendants to meet. *See Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 939 (7th Cir. 2001). A "mere scintilla" of evidence is not sufficient to sustain a verdict, but the Court should not substitute its view of the contested evidence in place of the jury's determination. *Filipovich v. K & R Express Sys., Inc.*, 391 F.3d 859, 863 (7th Cir. 2004). If, viewing the evidence in the light most favorable to the prevailing party, there exists within the record any reasonable basis to support the verdict, the

Court will not set aside a jury verdict. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (citation omitted). Issues of credibility and weight of evidence must be left to the jury. *Id.*; *see also Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002) (the test is whether "no rational juror could have found for the prevailing party").

Finally, a court can alter or amend a jury verdict under Rule 59(e) to correct a "manifest error of law or fact" within 28 days of the entry of judgment. *See* Fed. R. Civ. P. 59(e); *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012). The Seventh Amendment requires that the Court "accord substantial deference to the jury's assessment" of damages. *Spina v. Forest Pres. Dist. of Cook Cty.*, 207 F. Supp. 2d 764, 771 (N.D. Ill. 2002) (citing *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985)). Nevertheless, "the court must also ensure that the award is supported by competent evidence." *Ramsey*, 772 F.2d at 1313. If the Court finds that damages are excessive, the proper remedy is remittitur rather than a new trial. *RRK Holding Co. v. Sears, Roebuck & Co.*, 563 F. Supp. 2d 832, 835 (N.D. Ill. 2008). Rule 59(e) does not permit parties to obtain relief by advancing "arguments that could and should have been presented to the district court prior to the judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation omitted) (internal quotation marks omitted). Relief is granted under Rule 59(e) only in the rare circumstance where the moving party has shown that there is good reason to set the judgment aside. *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009); *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191–92 (7th Cir. 1990).

## ANALYSIS

**I.    10b-5 Claim**

Defendants challenge the jury verdict in Patel's favor on the 10b-5 claim arguing that the evidence presented at trial does not support the verdict. Because Patel failed to present any evidence linking Defendants' misrepresentations to the decline in price of the options in which he invested, the Court grants Defendants' motion for judgment as a matter of law with regard to the 10b-5 claims and Defendants' motion for remittitur of consequential damages. Because Patel's contract and fiduciary duty claims provide an independent basis upon which to award compensatory damages, however, the Court denies the motion for remittitur of compensatory damages.

To find in Patel's favor on the 10b-5 claim the Court instructed the jury that Patel must establish all of the following elements by a preponderance of the evidence:

> "1. [Defendants] made an untrue statement of a material fact in connection with the purchase of securities; 2. [Defendants] acted knowingly; 3. [Defendants] used mail, telephone, internet, or a securities exchange in connection with the purchase of securities, regardless whether the instrumentality itself was used to make an untrue statement or a material omission; 4. Ketan Patel justifiably relied on [Defendants'] untrue statement of a material fact in buying securities; and 5. [Defendants'] misrepresentation caused Ketan Patel to suffer damages."

Doc. 104 at 30.[1] Defendants argue the sufficiency of the evidence with respect to only elements 2, 4, and 5 of the 10b-5 claims: acting knowingly, justifiable reliance, and loss causation respectively.[2]

---

[1] Defendants did not raise any objections to these jury instructions either at the time of the trial or in their post-trial motion, thus these instructions are controlling for purposes of establishing liability. *See Deleon v. Atia*, No. 98 CV 5919, 1999 WL 1044209, at *3 (N.D. Ill. Nov. 9, 1999) (objection to verdict caused by erroneous jury instructions waived when not raised before the jury retires to consider the verdict).

### A. Defendants Acted Knowingly

The jury instructions in this case state that, "[Defendants] acted knowingly if they made an untrue statement with the knowledge that the statement was false." Doc. 104 at 32. At trial, Patel and his two corroborating witnesses testified that Wagha had assured Patel that he would only invest conservatively and that Patel had made it clear to Wagha that his paramount concern was the safety of his money, not any return on the investment. Despite offering these assurances, Wagha began trading options on Patel's account almost immediately. *See* Def.'s Trial Ex. 1. Patel also testified that he would not have invested with Wagha if he knew that Wagha would invest the money on high-risk options. Additionally, the trial record shows that under a conservative investment strategy Wagha's fees would be limited to 1.2% of the assets under management, whereas if he were to pursue a higher-risk strategy he could potentially receive larger payments—35% of all growth over 10%. 09/09/15 Tr. 218:22–19:14. Based on this evidence, a reasonable jury could have concluded that Wagha made the false statements regarding the risk strategy he would pursue to Patel in order to induce Patel to invest with him, knowing that he would in fact pursue a high-risk strategy in hopes of obtaining the higher compensation.

Defendants present only a barebones argument with no citations to the record that the jury verdict is against the weight of the trial evidence "because there was insufficient evidence of *scienter* required for Section 10(b) liability." Doc. 108 at 8 (emphasis in original). In support, they cite a case that is only tangentially relevant to this case.[3] Citing *Greer v. Advanced*

---

[2] Defendants advance no argument with respect to the 10b-5 claim that Wagha never made any oral representation to only invest Patel's money conservatively. Therefore, for the purpose of deciding the 10b-5 issue, the Court assumes Wagha did make such a representation.

[3] Defendants also reference a case titled *Janus Capital Group, Inc. v. First Derivative Traders*, but do not provide a citation for the case, thus the Court does not consider it here. *See United States v. Hook*, 471 F.3d 766, 773 (7th Cir. 2006) (failure to provide citation support waives argument).

*Equities*, 683 F. Supp. 2d 761, 775 (N.D. Ill. 2010), they argue that allegations of financial motive are not sufficient to establish scienter. This is true, but not instructive here. In *Greer*, the plaintiffs were attempting to demonstrate that the defendants knew information contained in a memorandum the defendants provided to plaintiffs to induce them to invest in a technology company were false. *Id*. at 775–76. The defendants were also invested heavily in the technology company and would stand to benefit from the plaintiffs making a sizable investment in the company. *Id*. at 774–75. The court held the mere fact that the defendants stood to gain from the act of the plaintiffs' investing in the company was insufficient to show they knew the contents of the memorandum to be false. *Id*. at 775. Here, the situation is quite different. The truth or falsity of the assurance Wagha gave to Patel is determined solely by Wagha. Patel adduced sufficient evidence at trial to support an inference that at the time Wagha offered the assurances that he would trade conservatively, he intended to trade high-risk options. And, as noted above, a reasonable jury could have concluded that Wagha had access to information regarding his own thoughts and intentions at the time he gave those assurances.

### B. Justifiable Reliance

Defendants advance two arguments that Patel produced insufficient evidence at trial to support a jury finding of justifiable reliance. First, Defendants argue that the record shows that Patel chose to invest with Wagha because Dr. Ritesh Patel, a friend of Plaintiff Patel, recommended him and, impliedly, Patel did not rely upon any representations made by Wagha. Second, though not clearly stated, Defendants argue that even if Patel did rely on oral statements Wagha made at the time of investing, such reliance was not justifiable because Patel had access to online statements showing options trading, he employed a CPA to assist with his taxes, and

6

Patel testified that a conservative strategy would not have resulted in the large gains he experienced in the first two months of his relationship with Defendants.

The jury's finding that Patel acted in reliance on Wagha's assurances is sufficiently supported by the record. Patel testified that Dr. Patel referred him to Wagha and that is "the reason [he] moved [his] money." 9/8/15 Tr. 12:1–7. However, Patel testified repeatedly that he discussed with Wagha his need to have the money in a short period of time to invest in purchasing a 7-Eleven franchise, that he wanted his money invested conservatively, and that Wagha understood and agreed to these conditions. Patel also testified that he spoke with Wagha subsequent to making the initial investment to ensure that his money was safe and that Wagha understood that he wanted a conservative strategy. Some of these conversations were corroborated by the uncontroverted testimony of Patel's witnesses Mitesh Patel and Kaushik Patel.[4] Finally, Patel sent Wagha an email on June 11, 2011 in which he stated "[he] was hesitant initially about [investing with Wagha], but after [Wagha's] affirmation that [he] would only do very safe investments, [Patel] gave [him] the $510,000." Pl. Trial Ex. 8. Wagha did not refute this statement in his response to this email. *Id.* A reasonable jury could have concluded from this evidence that Patel would not have invested with Wagha absent these assurances regardless of Dr. Patel's recommendation. Therefore, the evidence at trial supports a finding of reliance.

The jury finding that Patel's reliance was justified is also supported by the record. Whether a party's reliance upon statements by the defendant was justifiable is a question of fact for the jury. *Talton v. Unisource Network Servs., Inc.*, Case No. 00 C 7967, 2004 WL 2191605, at *7 (N.D. Ill. Sept. 27, 2004). While there is no clear standard as to what constitutes justifiable reliance for 10b-5 purposes, several courts have considered the following factors:

---

[4] Dr. Ritesh Patel, Mitesh Patel, and Kaushik Patel are not related to Plaintiff.

> (1) [t]he sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of long standing business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.

*Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir. 1987) (citations omitted).

Patel testified that he was an inexperienced investor who relied upon Wagha to do his investing because Wagha is an expert. He further testified that he had trouble accessing information about his account online and did not know what an option was. Additionally, Patel and his corroborating witnesses testified that on several occasions Patel confirmed with Wagha that his investment was safe and invested conservatively. A reasonable jury could have found that based on this evidence Patel's reliance was justifiable despite the fact that he could have read his statements and seen what securities Wagha was trading on his account. The jury could have found that even with that knowledge, Patel would not have understood that Wagha was pursuing a high-risk strategy because of his lack of investment sophistication.

Defendants cite three cases from other circuits for the proposition that a plaintiff cannot demonstrate justifiable reliance where he had an opportunity to detect the fraud but chose not to do so. *See Kennedy*, 814 F.2d at 805; *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1517 (10th Cir. 1983); *Bull v. Chandler*, No. C-86-5710 MHP, 1992 WL 103686, at *4–5 (N.D. Cal. Mar. 12, 1992). These cases, however, are distinguishable from the present case and not instructive here. Each case Defendants cite dealt with alleged misrepresentations about specific investments, not a general investment strategy. The defendants in those cases represented that the specific investments they were recommending were low- or no-risk despite contradictory statements in

8

the supporting documentation provided to the plaintiffs. For example, in *Kennedy*, the court found that, "[f]or each oral representation that Sinclair made and upon which appellants claim they relied, there was a direct refutation by the plain language of the offering memorandum." *Kennedy*, 814 F.2d at 803. The court held that because both statements could not be true at the same time, one statement must have been false. *Id.* The plaintiffs in *Zobrist* and *Bull* were faced with similar contradictory statements. *See Zobrist*, 708 F.2d at 1518 (statements in the private placement memorandum directly contradicted by oral statements by defendants); *Bull*, 1992 WL 103686, at *4–5 (plaintiff was on notice where statements in offering memoranda directly contradicted representations by the defendant). Here there is no such contradiction between Wagha's oral assurances and the written Investment Agreement. The Investment Agreement, in addition to authorizing options trading, includes a blanket limitation on all activity conducted in the account—it must comply with Patel's "investment objectives." P. Trial Ex. 1. Patel alleged that he discussed his investment objectives with Wagha in great detail prior to signing the Investment Agreement and that Wagha agreed to only pursue safe investments. Patel presented evidence that his primary concern was the safety of his investment and not the size of his return. Because the Investment Agreement limited the authorized conduct to activity consistent with Patel's investment objectives, the oral statements of those objectives did not contradict the written agreement.

Finally, Defendants make no argument that Patel's reliance on Wagha's statements at the time of investment was not justifiable; all of Defendants' arguments are focused on the post-investment time period. The argument appears to be that even if his reliance at the time of investment was justifiable, Patel had ample opportunity to discover that Wagha was not following his instructions to trade conservatively and his failure to make efforts to do so renders

9

his continued reliance unjustified. During the trial, Patel testified that ten days after making the investment with Wagha, he attempted to view his account online but was unable to understand what he saw there. Patel contacted Wagha and told Wagha he would visit Wagha's office to discuss his account, which he subsequently did. Patel testified that at that meeting Wagha told him everything was fine with his account but that they did not discuss the contents of his statement. 9/8/15 Tr. 58:8–24. Defendants do not provide any argument as to in what manner or how often Patel was required to verify that his instructions were bring followed. Over the less than four months between making his initial investment with Wagha and discovering he had lost a large sum of money, Patel consulted with Wagha on at least two occasions and each time Wagha assured him that everything was fine.

Therefore, Patel provided sufficient evidence at trial for a reasonable jury to conclude that he relied on Wagha's assertions that Wagha would invest his money conservatively and that such reliance was justifiable.

### C. Loss Causation

Defendants argue that "there is no evidence that any of the Wagha Defendants [sic] statements affected the value of the securities at issue or directly caused loss." Doc. 108 at 9. Loss causation is a required element of a private 10b-5 claim. *Dura Pharm. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005). To prove loss causation, a plaintiff must establish "a causal connection between the material misrepresentation and the loss." *Id*. That is, a "defendant's actions had something to do with the drop in value." *Ray v. Citigroup Global Markets, Inc.*, 482 F.3d 991, 994–95 (7th Cir. 2009). The fraudulent statement must have concealed something from the market that, when disclosed, negatively affected the value of the security. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005); *see also First*

*Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) (loss causation requires a showing "that the misstatements were the reason the transaction turned out to be a losing one").

Here, Wagha concealed the fact that he would invest in high-risk options with Patel's money. Patel testified that he was not aware that Wagha was making these trades and that he never would have invested his money with Wagha had these risks been disclosed to him. Patel did not however provide any evidence that the decline in the value of the options Wagha purchased in his account was in any way connected to Wagha's misstatements at the time of account formation. Therefore, Patel has failed to carry his burden to adduce evidence sufficient for a reasonable jury to find in his favor on all elements of the 10b-5 claim, and the Court must enter judgment as a matter of law in favor of Defendants on the 10b-5 claim.[5] *See Greene v. Potter*, 557 F.3d 765, 771 (7th Cir. 2009) (judgment as a matter of law proper where plaintiff has provided insufficient evidence for any rational jury to find in her favor).

### D. Consequential Damages

Defendants raise two arguments in support of their motion for remittitur of the $64,000 consequential damages award. First, Defendants argue that according to the jury instructions, consequential damages were only available for the fraud claim, and second, Plaintiff provided insufficient proof of damages. Despite Defendants' argument with respect to the jury instructions being plainly incorrect and Defendants failing to support their second argument with

---

[5] Defendants also sought to overturn the verdict on the 10b-5 claim arguing that it was inconsistent with the jury finding in Defendants' favor on the fraud claim and on the bases of the affirmative defenses of ratification, laches, and estoppel. Because Plaintiff failed to prove loss causation disposing of the 10b-5 claim in its entirety, the Court need not examine Defendants' remaining arguments. However, Defendants' inconsistent verdict defense fails as the fraud and 10b-5 verdicts can be reconciled because the fraud claim has a higher standard of proof. *See, e.g.*, *Ramos v. David & Geck, Inc.*, 968 F. Supp. 765, 770 (D.P.R. 1997) (jury verdict "entirely consistent" where jury found for defendant on claim with higher burden of proof and for plaintiff on claim with lower burden). Defendants' argument based on the affirmative defenses also fail because these affirmative defenses were not timely pleaded and are thus waived. *Maul v. Constan*, 928 F.2d 784, 787 (7th Cir. 1991) (affirmative defenses not raised until post-trial motions are waived).

citation to the record or relevant legal authority, the motion for remittitur of consequential damages is granted because consequential damages may only be awarded for a successful 10b-5 claim and, as discussed above, the Court has granted Defendants' motion for judgment as a matter of law on the 10b-5 claim.

## II. Contract Claim

Defendants advance three arguments for why the Court should reverse the jury verdict in favor of Patel on his contract claim: (1) the weight of the evidence does not support a finding that Patel communicated his investment objectives to Defendants; (2) Patel did not perform under the agreement; and (3) Patel did not provide sufficient evidence to calculate damages.

At trial, Patel testified that he informed Wagha on several separate occasions both prior to and after contracting that he wished to invest conservatively and that he needed the money in a few months to purchase a 7-Eleven franchise. Patel also provided two eye witnesses, Mitesh Patel and Kaushik Patel, who corroborated his testimony that he sought to invest conservatively and had conveyed this desire to Wagha. Additionally, Patel provided the June 11, 2011 email in which he wrote to Wagha that he "instructed [Wagha] right before giving [Wagha] the $510,000 back in February that [he would] need the money in April." Pl. Trial Ex. 8. The email further stated that Patel could not risk the money and that Wagha knew this. Wagha replied to this email taking "full and complete responsibility" and did not deny any of Patel's statements. *Id.*

Defendants argue that the "[e]vidence to the contrary is overwhelming" listing fifteen items that they claim contradict and outweigh the evidence Patel adduced. Doc. 108 at 11. Defendants do not support any of these fifteen items with a citation to the record or even to the Declaration Defendants' counsel filed. To the extent the Court is able to determine what parts of the record support these contentions, they do not outweigh the evidence Patel provided at trial.

12

The grist of Defendants' argument is that Patel signed several documents that authorized options trading and included acknowledgements of the risks of investing. These arguments are off the mark. It is not disputed that Patel signed the agreements. What is disputed is whether he informed Wagha of his desire to make only conservative investments at the time he signed the contract. Defendants' arguments do little if anything to tip the scales on this point. Therefore, based on the evidence provided at trial, a reasonable jury could have found that Patel communicated his investment objective to pursue only conservative investments and that he needed the money to purchase a 7-Eleven franchise to Wagha both prior to and after signing the Investment Agreement, and such a finding is not against the manifest weight of the evidence.

Defendants' second argument that Patel did not perform under the agreement because he failed to advise Defendants in writing of any changes to his investment objectives or any restrictions on the specific securities in which he wished to invest also fails. Even assuming that Patel's failure to comply with these provisions could obviate Defendants' obligations under the contract, the manifest weight of the evidence does not show that he failed to comply. Patel argues that his investment objectives were the same from the time of signing the contract onward. The clause in question is only triggered if Patel changes his investment objectives or risk tolerance. As discussed above, Patel provided sufficient evidence at trial to establish that his investment objectives, as communicated to Wagha, were the same from the time of the initial investment until at least June 2011. Additionally, Patel's claim is not premised on the argument that Defendants breached the contract by investing in any specific security, but instead by not investing in concert with his investment objectives. Therefore, a reasonable jury could have found that Patel performed under the contract.

13

Finally, Defendants argue that Patel provided insufficient evidence to support damages on the contract claim. Defendants' argument is not clearly drafted but appears to boil down to, "[t]o the extent Plaintiff's damages may be calculated based on gain or loss in his Discretionary Account, the evidence strongly suggests Plaintiff would have suffered *zero* damages" if he had continued to allow Defendants to trade his funds. Doc. 108 at 14. Defendants advanced no evidence in support of this contention at trial and the only support they provide is an unexplained citation to an online source that was not presented at trial.[6] On the other hand, at trial, the jury had the opportunity to review Patel's Ameritrade statements, which showed an initial deposit of $560,937 in February 2011, a withdrawal of $175,000 in June 2011, and a peak, post-discovery account value of $221,824. Def. Trial Ex. 1. Based on this evidence, if Patel had withdrawn the remainder of his investment with Defendants at the peak time, he would have suffered a loss on his initial investment of $164,113. This figure is *greater* than the amount of compensatory damages the jury actually awarded. Thus the damages awarded are commensurate to the actual losses Patel suffered and supported by documentary evidence submitted at trial.

## III. Fiduciary Duty Claim

Defendants argue that Patel's fiduciary duty claim is based solely on the theory that Patel orally communicated his investment objectives to Wagha and Wagha failed to follow these objectives. For the same reasons discussed above in Section II, the Court finds that there is sufficient evidence for a reasonable jury to find that Patel did convey such instructions and that Wagha failed to follow them. Thus, the Court denies Defendants' motion on this point as well.

---

[6] *Stocks: Worst day of the year for the Dow and S&P*, CNN Money, (June 1, 2011), http://money.cnn.com/2011/06/01/markets/markets_newyork/.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion in part and denies it in part. The Court grants Defendants' motion for judgment as a matter of law with respect to the 10b-5 claims and the motion for remittitur of the $64,000 in consequential damages. The Court denies all other motions.

Dated: June 8, 2016

_____
SARA L. ELLIS
United States District Judge